# GIBSON DUNN

Orin Snyder
Direct: +1 212.351.2400
Fax: +1 212.351.6335
OSnyder@gibsondunn.com

April 9, 2026

The Honorable Rachel Kovner, U.S.D.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re:** *U.S. v. Any And All Shares Of 21 East 61 Street Apt. Corp., et al.*, **No. 24-cv-2147**

Former Mongolian Prime Minister Sukhbaatar Batbold respectfully submits this letter in response to the government's motion for a conference on its motion for leave to amend and to address Mr. Batbold's motion to intervene (Ex. A) and proposed summary judgment motion (Ex. B).

In this civil forfeiture action, filed in 2024, the government asks this Court to strip two Manhattan apartments (the "NY Apartments") from their rightful owners, the Claimants in this action. What the government does not tell this Court is that the factual allegations underlying that request originate from a discredited dossier created by the private investigative firm K2 Integrity (the "Kroll Dossier") secretly commissioned by foreign political operatives for a malicious purpose: to destroy the 2021 presidential candidacy of former Prime Minister of Mongolia Sukhbaatar Batbold, the proposed intervenor here.

The operative Complaint, and now the government's proposed amended complaint, also fail to disclose another critical fact: the government's central allegations have been the subject of prior litigations in courts across three continents. The government's pleadings do not mention that a three-judge Mongolian court unanimously ruled in 2022 that the central corruption theory at the heart of the government's case is "not true." And the government does not tell the Court that undersigned counsel for Mr. Batbold has voluntarily produced hundreds of contemporaneous documents, seventeen sworn witness statements, and a judicial ruling demonstrating that this case has no good-faith basis in law or fact—and that the corruption allegations at the heart of this case are simply untrue. As the centerpiece of this case, Mr. Batbold has an obvious and compelling interest in its outcome. Rule 24 intervention exists for a case like this one. *See* Fed. R. Civ. P. 24.

**THE GOVERNMENT'S THEORY AND ITS ORIGINS.** The government's theory is this: Mongolia's former Prime Minister allegedly steered two 2011 copper trading contracts from the Mongolian state-owned Erdenet Mining Corporation ("EMC") to Claimant Hak Seon Kim, Ph.D., and her husband Choo Young Cheong. The Complaint alleges that Dr. Kim and Mr. Cheong then used those proceeds to purchase the NY Apartments as proxies for Mr. Batbold—allegedly in violation of Mongolian law.

That theory did not originate in this case or with federal investigators. It originated years ago in the Kroll Dossier and is now being recycled by the government in this action. K2 had a potent incentive to manufacture its fake dossier. By the terms of its engagement, K2 stands to receive an up-to-$50 million "success fee" in the event the NY Apartments (or other properties) are recovered. K2 is the progenitor of the operative corruption theory at the center of this case and was hired by shadowy foreign figures for the purpose of interfering in foreign democratic elections.

And yet, K2 may have a significant financial interest in the outcome of this forfeiture action brought by the United States.

On the merits, the undisputed evidence—seventeen sworn statements and dozens of contemporaneous commercial, government, and judicial documents—establishes that Prime Minister Batbold did not corruptly steer contracts to anyone. The copper trading contracts were lawful and legitimate, awarded in accordance with EMC's own established standards. No Mongolian law was violated. The corruption narrative is, in its entirety, a political fabrication.

**THE COORDINATED 2020 LITIGATION CAMPAIGN.** Mr. Batbold has defeated these same allegations repeatedly. In November 2020, the Kroll Dossier was deployed as the centerpiece of coordinated civil lawsuits filed against Mr. Batbold around the world, purportedly on behalf of EMC and two other entities. These were not legitimate proceedings. They were a weapon. The political operatives who secretly commissioned the Kroll Dossier deliberately timed the filings to generate a media campaign designed to force Mr. Batbold from Mongolia's 2021 presidential race before any court could rule on the merits.

It worked—initially. The media coverage drove Mr. Batbold from the presidential election. But after years of litigation, the cases collapsed entirely. It emerged, in a case that undersigned counsel litigated in the New York Supreme Court, that the entities named as plaintiffs had never authorized the filings made in their names. The global law firm that had appeared as counsel for the named plaintiffs later withdrew from every proceeding. The 2020 lawsuits disintegrated.

**THE SDNY § 1782 PROCEEDING UNMASKS THE SCHEME.** To identify who had orchestrated the campaign, the undersigned counsel filed a proceeding in 2022 on behalf of Mr. Batbold in the Southern District of New York under 28 U.S.C. § 1782, seeking discovery from K2. K2 fought that discovery aggressively, refusing even to produce a privilege log. The Honorable Ona T. Wang rejected K2's stonewalling, characterizing its tactics as holding discovery "hostage." The documents the court ultimately compelled K2 to produce confirmed the Kroll Dossier and the 2020 lawsuits were funded in secret by proxies of Mr. Batbold's political opponents.

**THE MONGOLIAN COURT'S RULING: THE CORRUPTION THEORY IS "NOT TRUE."** In 2022, Mr. Batbold brought a defamation action in Mongolia to disprove the corruption allegations in the Kroll Dossier on their merits. A three-judge panel unanimously held that the theory underlying the Dossier—recycled in this action—was "not true." Directly in conflict with the allegations in this case, the Mongolian court found specifically that EMC's contracts with Mr. Cheong's company were awarded "in accordance with the standards established by [EMC]"; there was "no evidence" Mr. Batbold had "personally influenced [EMC] to sign the contracts with foreign companies"; and no evidence supported that he "personally gained profits, conspired with others, [or] caused damages to [EMC]." The court ordered a Mongolian news outlet to retract its stories premised on those false allegations.

By 2024, every private lawsuit premised on the Kroll Dossier had been dismissed or withdrawn. Not a single court had accepted the corruption theory. One court expressly held it was false. That should have ended the matter.

**THE GOVERNMENT'S FILING—AND ITS FAILURE TO ENGAGE THE RECORD.** In March 2024—weeks before upcoming Mongolian elections in which Mr. Batbold was widely expected to win reelection to his twenty-first year in Parliament—the U.S. government, without any prior notice or warning, filed this action. Mr. Batbold's counsel contacted the government immediately after the filing. In the meeting that followed, prosecutors acknowledged they had not fully reviewed the public litigation record, including the Section 1782 proceeding in the SDNY, and were unaware that the Mongolian court had ruled in Mr. Batbold's favor. Counsel reasonably assumed the government would dismiss the case once it understood this prior history and that the Complaint could not be reconciled with it.

But the government refused to withdraw the case. Instead, it is litigating an action whose factual foundation is contradicted by hundreds of private emails, official government records, contemporaneous commercial documents, interviews with senior Mongolian government officials and mining executives, seventeen sworn witness statements, and a report from a Harvard-trained expert in Mongolian politics and economics. Even now the government's proposed amended complaint fails to comply with its essential duty of candor, concealing the Kroll Dossier, the Mongolian court's ruling, and the extensive prior litigation record.

**THE COURT SHOULD ALLOW MR. BATBOLD TO INTERVENE.** Mr. Batbold now moves to intervene in this case to protect his direct, substantial, and legally protectable interests in his reputation, professional opportunities, and avoidance of adverse precedent by opposing the government's motion for leave to amend; moving to dismiss the operative complaint; and moving for summary judgment as a matter of law. He moves to intervene as of right under Rule 24(a)(2), or alternatively, under Rule 24(b)(1). No existing party can adequately represent his interests, which are unique to him. And the government's case turns on a single proposition—that Mr. Batbold committed corruption by steering copper trading contracts in 2011—which he is uniquely positioned to disprove. Rule 24 exists for precisely this circumstance.

Mr. Batbold therefore respectfully requests that this Court allow him to participate in any pre-motion conference on the government's motion for leave to amend and related proceedings. At that conference, Mr. Batbold will be prepared to explain to the Court why it should deny any amendment as futile, unduly delayed, and in bad faith—or, in the alternative, why the amended Complaint should be dismissed under Rule 12(b)(6). Mr. Batbold will also be prepared to explain why the Court should grant him permission to move for summary judgment now (*see* Ex. B)—after he has engaged with the government for two years and already produced hundreds of documents and seventeen sworn statements to the government in informal discovery. The government's case has no admissible, credible evidentiary foundation—amended or otherwise. Fed. R. Civ. P. 56.

**CONCLUSION.** Mr. Batbold's motion to intervene presents an extraordinary issue: whether the government's allegations that a former Prime Minister of a sovereign nation committed crimes halfway around the world over a decade ago should proceed without ever allowing him to defend himself. The fundamental purpose of Rule 24 intervention does not permit that result. The Court should grant Mr. Batbold's motion to intervene and dismiss this case.

We look forward to addressing these important issues with the Court.

**GIBSON DUNN**

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

/s/ *Orin Snyder*
Orin Snyder
Stephanie Brooker (*pro hac vice* forthcoming)
Lee R. Crain

*Attorneys for Proposed Intervenor*
*Sukhbaatar Batbold*

cc: All Counsel of Record (via CM-ECF)