KELLNER HERLIHY GETTY & FRIEDMAN, LLP

470 PARK AVENUE SOUTH, 7th FLOOR

NEW YORK, NEW YORK 10016

DOUGLAS A. KELLNER
CAROL ANNE HERLIHY
EUGENE F. GETTY
ALAN M. FRIEDMAN
JEANNE-MARIE WILLIAMS
THOMAS VANDENABEELE
CHARLES E. KRAUSCHE II
OLGA V. PETROVSKY

———

DERRICK M.NG
MICHELLE D. BAZINET
JAEMYUNG JAE LEE
MERIELEN DAL RI ZIVIANI°
EDI EBIEFUNG
BRENDAN SULLIVAN
AMAL YENILIEIEVA∝*

TELEPHONE: (212) 889-2121
FACSIMILE: (212) 684-6224
dak@khgflaw.com

COUNSEL
MICHAEL H. SINGER
ROBERT P. MCGREEVY
HERMAN D. FARRELL III
NADA ABDELSATER λ
DMITRIY BOGORODSKIY φ

° Admitted in Brazil
Λ Admitted in Lebanon
φ Qualified in the Russian Federation
* Admission Pending
∝ Qualified in Ukraine

April 10, 2026

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
255 Cadman Plaza East
Brooklyn, New York 11201

*United States v. Shares of 21 East 61st Street Apartment Corp. et al.*
Civil Docket No. 24-2147

Dear Judge Kovner:

Claimants Lovitas, Inc., Baloas, Inc. and Dr. Hak Seon Kim respectfully submit this response to the government's request for a pre-motion conference (ECF No. 49). Although Claimants welcome the opportunity to participate in a pre-motion conference, Claimants intend to oppose the proposed amendments based on the reasons explained below.

Claimant Dr. Kim and her husband Choo-Young Cheong are international business people originally from South Korea. For nearly forty years, Mr. Cheong has worked in international commodities trading, including first with one of Korea's largest and most influential companies, Samsung, and later with his own businesses (operated through different corporate entities). For over ten years, Mr. Cheong was Samsung's lead representative in Mongolia, and during that time he developed a strong business reputation and deep business relationships in that country, where he lived off-and-on for decades. Mr. Cheong and Dr. Kim run their business together, as a family, and as their wealth has grown have invested in other sectors, including real estate around the world.

The two New York City apartments the government seeks to forfeit here are part of Dr. Kim and Mr. Cheong's global real estate portfolio. These apartments, like others Dr. Kim and Mr. Cheong own around the world, are investment properties. The apartments have been sources of rental income. They have been vacation homes. At one point, when their son was considering studying in New York City, Dr. Kim and Mr. Cheong anticipated he might even live in one of the apartments, though he ended up studying elsewhere.

In 2020, as former Mongolian Prime Minister Batbold was running for election, lawsuits were filed against Mr. Batbold, Mr. Cheong, Dr. Kim, and others around the world seeking to freeze their assets. The lawsuits were funded by Mr. Batbold's political opponents to damage his campaign. One of those cases was filed in New York Supreme Court and sought an *ex parte* order

to attach these same two apartments—an order that was initially granted by a duty judge the day before Thanksgiving 2020 but vacated just days later after opposition to the *ex parte* order. The case collapsed a few weeks later and was withdrawn. Mr. Cheong and Dr. Kim were the collateral damage of that effort, and were substantially harmed by the global asset freezes of their property and the vast sums they had to invest in their worldwide legal defense. But by 2023, each of these cases had been resolved, and we had believed the matter was over.

When the government filed this case in 2024, while Mr. Batbold was again seeking re-election to the Mongolian parliament, we assumed the government had misunderstood the facts. For that reason, Claimants worked assiduously to cooperate with the government in this case, both informally engaging the government, and in formal discovery. Even though the government served scores of improper special interrogatories and document requests, Claimants responded to those requests. We met and conferred. We provided numerous verified interrogatory responses and documents. We assumed that would lead the government to do the right thing and dismiss this case.

***The proposed amendment should be denied as futile.*** While courts permit plaintiffs to amend complaints that sufficiently plead the underlying facts, in cases where "the proposed amended complaint cannot survive the motion to dismiss" the motion to amend should be denied as futile. *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 291 (E.D.N.Y. 2016). Rule 15 is identical to the standard for Rule 12(b)(6), and in the context of civil forfeiture proceedings, a movant must meet the heightened pleading standard under Supplemental Rule G(2)(f). When proposed amendments fail to meet the pleading standard and thus are futile, the Court has "a variety of ways in which it may deal with the pending motion to dismiss" in order to "promot[e] judicial economy by obviating the need for multiple rounds of briefing addressing complaints that are legally insufficient." *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020). The government's proposed amended complaint does not moot the Claimants' pending motion to dismiss because the amendments do not cure any deficiencies and do not save the complaint. Just as in *Pettaway v. Nat'l Recovery Sols,* the Court should deny the government's application and grant the motion to dismiss, addressing the original complaint and considering the government's new allegations, which, as the Second Circuit has held, is a satisfactory methodology. *Id*.

*First*, the government's claims remain time-barred under 19 U.S.C. § 1621. *See* Ex. A (MTD) at 9-12.[1] All material facts underlying the government's theory were publicly available by 2018. *Id.*

*Second*, the amended complaint does not allege any new facts showing a specific and identifiable predicate offense. Ex. A at 12. In particular, this whole forfeiture case hinges on the allegation of a predicate offense against Mongolia involving "bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official" offense" ("specified unlawful activity"). 18 U.S.C. § 1956(c)(7). However, the complaint still fails to plead any facts showing that either bribery or any misappropriation of public funds was committed in Mongolia.

By providing "information regarding the scope of Mongolian law" (ECF No.49 at 1), the Government merely recited additional provisions. The new reference to Article 3 of the Anti-Corruption Law adds nothing to the complaint because 18 U.S.C. § 1956(c)(7) does *not* encompass

---

[1] Pursuant to the Court's bundling rule, Claimants served but did not file the motion to dismiss. Claimants file the motion to dismiss as an attachment for context so the Court may have insight into the various defects that motion identified and why the complaint fails even remotely to address them.

general corruption. While the complaint now mentions three types of bribery crimes under Articles 268-270 of the Mongolian Criminal Code, it still fails to allege any specific facts showing the commission of these crimes. The complaint still does not allege that Mr. Batbold gave a bribe or was bribed in connection with the alleged scheme, and the word "bribery" does not even appear in the complaint except for mere recitations of 18 U.S.C. § 1956(c)(7). Further, the complaint still does not allege that any "public funds" were misappropriated in the course of the alleged scheme Ex. A at 16. Moreover, even though the government has corrected its inaccurate reference to Article 263 of the Criminal Code and conceded that abuse of power must involve "a large amount of damage or serious harm," the complaint does not plead any damage or harm.

Being unable to cure these fatal deficiencies, the government added new conclusory allegations about the personal family friendship of the Batbolds and Cheongs. The government appears to imply that Claimants purchased the Defendant Apartments as a gratuity for Mr. Batbold allegedly steering mining contracts to Catrison. *See* FPAC ¶¶ 8(b)–(d), 32-42. But the government's speculative allegations suffer from an obvious *Twombly* problem: As the Supreme Court has explained, "an allegation of parallel conduct and a bare assertion of conspiracy . . . does not supply facts adequate to show illegality." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 557 (2007). That's all the government alleges here. This case is based on guilt by association—or, in this case, friendship. The government entirely fails to connect the relationship between the Cheong and Batbold families with allegedly steered contracts and thus fails to satisfy the pleading standard under Rule 12(b)(6), let alone the heightened standard under Supplemental Rule G(2)(f).

*Third*, the amended complaint still fails to trace the funds used to purchase the Defendant Apartments to any unlawful activity. Ex. A at 20-24. With respect to the Carlton House Property, the complaint traces the purchase of that apartment only to "Kim Account-1" and "Kim Account-2," but it never alleges that these accounts received *any* proceeds of criminal activity. In other words, the Carlton House Property is not linked to any illegal activity. With respect to the Park Imperial Property, the proposed Amended Complaint fails to allege that the specific funds in Kim Account-1 were traceable to the alleged offense. These tracing defects are fatal under Rule 12(b)(6) and Supplemental Rule G(2)(f).

Therefore, because the amended complaint fails to cure any of these three critical defects, the Court should *not* deny the pending motion to dismiss as moot and instead should deny the government's futile amendments and should grant Claimants' motion to dismiss.

***The proposed amendment is filed in bad faith, with undue delay and with prejudice to Claimants*** The Court should also deny the government's application to amend the complaint for undue delay, bad faith or dilatory motive, and undue prejudice to Claimants. The government filed its proposed amendments nearly four months after Claimants moved to dismiss and after obtaining Claimants' consent to extend the deadline to respond to the motion to dismiss twice in order to "*to fully address* the issues raised in the Claimants' motion" (ECF No. 47) and consult with "its own Mongolian law expert *to evaluate and respond to Claimants' legal arguments.*" (ECF No.48). However, instead of responding to Claimant's arguments, the government moved to amend its complaint on the day when its opposition was due. The proposed amendments do not address the issues raised in the motion, do not cure any defects, and do not refer to any opinion of a Mongolian law expert. These facts strongly suggest that the government never intended to respond to the motion to dismiss, contrary to its requests, and obtained Claimants' consent to extend the deadlines by providing misleading statements. The delay resulting from these bad-faith extensions and the amendment will prejudice Claimants because every day this case remains pending encumbers Claimants' properties and maligns their reputation.

For the foregoing reasons, Claimants respectfully agree that a pre-motion conference is appropriate and ask the Court to deny leave to amend and instead grant Claimants' Motion to Dismiss the Complaint with prejudice.

Respectfully,

*Douglas A. Kellner*

Douglas A. Kellner
*Attorneys for Claimants*